IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JEFFERY RUSSELL FINLAYSON, | **MEMORANDUM DECISION** |
| Petitioner, | **& ORDER DENYING** |
| | **HABEAS-CORPUS PETITION** |
| v. | |
| STATE OF UTAH, | Case No. 2:15-CV-818-DAK |
| Respondent. | District Judge Dale A. Kimball |

Represented by counsel, Petitioner filed an amended habeas-corpus petition. 28 U.S.C.S.

§ 2254 (2019). (Doc. No. 50.) The State responded, urging denial. (Doc. No. 54.) Petitioner

replied to the response, (Doc. No. 66), and the State replied to Petitioner's reply, (Doc. No. 72).

Having thoroughly reviewed the pleadings and all exhibits, the Court denies the petition.

## I. BACKGROUND

A portion of the background is quoted from a Utah Supreme Court opinion:

> Finlayson raped and sodomized his victim, whom he knew from
> school. *State v. Finlayson*, 956 P.2d 283, 286 (Utah Ct. App. 1998)
> (upholding convictions for rape and forcible sodomy). He was
> sentenced to concurrent terms of five years to life each for his rape
> and forcible sodomy convictions. Although he was initially
> convicted of aggravated kidnaping as well, that conviction was
> reversed on appeal. *Id.* at 295. [Utah Supreme Court] affirmed that
> reversal, *State v. Finlayson*, 2000 UT 10, ¶ 36 . . . . The trial court
> then resentenced Finlayson on the rape and forcible sodomy
> convictions. The sentences mirrored those initially imposed by the
> trial court. Finlayson appealed that resentencing to the court of
> appeals.
>
> Before the court of appeals, Finlayson argued that the
> resentencing was improper because the trial court failed to resolve
> alleged discrepancies between the official version of the offense as
> listed in a presentence investigation report and the evidence at trial.

In its disposition of Finlayson's appeal of the resentencing, the court of appeals noted the possibility that the trial court lacked jurisdiction to resentence Finlayson, but ultimately affirmed the action of the trial court because it held that Finlayson was not prejudiced by the failure to resolve any alleged discrepancies, and the "new" sentences were unchanged from those originally imposed.

Both parties petitioned . . . for a writ of certiorari.

. . . .

Because neither [the supreme court] nor the court of appeals ordered the trial court to resentence Finlayson on the affirmed counts--either expressly or impliedly--and there [was] no other provision of law requiring resentencing in this case, the trial court was without jurisdiction to resentence Finlayson. Accordingly, [the supreme court] reverse[d] the court of appeals and order[ed] vacation of the resentencing. The sentences originally imposed by the trial court [were] valid.

*State v. Finlayson*, 2004 UT 10, ¶¶ 2-4, 16.

More background is drawn from the Utah Court of Appeals's opinion on appeal from denial of Petitioner's state post-conviction petition:

On January 27, 2005, Finlayson filed a pro se petition for post-conviction relief. Over the course of the next two years, Finlayson filed various motions related to his petition. In April 2006, the State filed a motion for summary judgment, to which Finlayson did not respond. In August 2006, Finlayson asked the district court to appoint counsel for him. In January 2007, pro bono counsel appeared on behalf of Finlayson. In February 2008, Finlayson's counsel obtained a court order to examine and copy the handwritten notes referred to by the victim during her trial testimony. Between February 2008 and June 2011, Finlayson and his counsel allegedly met occasionally to research the case, but during this time, counsel "did not file any materials with the Court, nor did he have any contact with counsel for the State." In August 2008, Finlayson was paroled.

In June 2010, Finlayson was reincarcerated in connection with new charges arising from another incident. In September 2011, he was convicted on charges of aggravated kidnapping, aggravated assault, and damage to or interruption of a communication device, for which he was sentenced to six years to life in prison, up to five years in prison, and 180 days in jail, respectively. These sentences

were to run concurrently with each other and with any other sentences Finlayson was already serving.

In late 2010, Finlayson's counsel allegedly obtained new evidence pertaining to the post-conviction petition but did not contact the State or file anything with the court. In June 2011, Finlayson sent a letter to the district court requesting an update on the status of his case, at which point he learned that the case file had been destroyed in February 2009. Nearly a year later, in May 2012, Finlayson requested a status hearing on his case, which was held on June 1, 2012. Following the status hearing, the State moved to dismiss the case for failure to prosecute. Subsequently, Finlayson filed a motion to amend and an opposition to the State's 2006 motion for summary judgment.

On November 9, 2012, the district court heard argument on all pending motions. In a memorandum decision issued January 10, 2013, the court granted the State's motion to dismiss for failure to prosecute and denied the remaining motions as moot. Finlayson appeal[ed, asserting] that the district court abused its discretion by dismissing his petition for post-conviction relief for failure to prosecute.

[The court of appeals] determine[d] that the district court did not exceed its discretion by granting the State's motion to dismiss for failure to prosecute. The district court was not required to conduct an interests of justice analysis independent of its analysis of the *Westinghouse* factors, and it was not required to rule on other pending motions prior to ruling on the State's motion to dismiss. Furthermore, the district court appropriately analyzed the *Westinghouse* factors. Accordingly, [the court of appeals] affirm[ed].

*Finlayson v. State*, 2015 UT App 31, ¶¶ 2-6 (citing *Westinghouse Elec. Supply Co. v. Paul W.*

*Larsen Contractor, Inc.*, 544 P.2d 876, 879 (Utah 1975)), *cert. denied*, 326 P.3d 1256.

## A. Petitioner's Counsel by Litigation Stage

| | |
|---|---|
| Pre-trial | Robert Steele, public defender |
| Trial | William Parsons |
| Direct appeal (Utah Ct. App.) | Robert Heineman |
| Certiorari petition (Utah S. Ct.) | Robert Heineman |

| | |
|---|---|
| Trial court resentencing | Robert Heineman |
| Second direct appeal (Utah Ct. App.) | Heather Johnson and Robert Heineman |
| Second certiorari petition (Utah S. Ct.) | Heather Johnson and Robert Heineman |
| State post-conviction application | Brian Namba |
| Post-conviction appeal (Utah Ct. App.) | Landon Allred; *pro se* |
| Post-conviction certiorari petition (Utah S. Ct.) | *pro se* |

## B. Grounds Raised by Litigation Stage

**Direct appeal - *Finlayson*, 956 P.2d at 283.**

1. Aggravated kidnaping conviction must merge with rape and/or forcible sodomy convictions.

2. Trial court erroneously gave State more peremptory challenges than Petitioner received.

3. Trial court erred in excluding Petitioner's expert witness testimony about Japanese culture.

4. Prosecutorial misconduct of three improper statements during closing argument: • a. that Petitioner testified that he had shown the victim a gun; • b. that State had done genetic testing on sperm taken from victim; • c. that Petitioner was honing his story.

5. Ineffective assistance of counsel because failed to: • a. raise merger issue; • b. object to prosecutor's closing statement; • c. obtain certified preliminary-hearing transcript; • d. obtain Korean translator; • e. obtain Japanese language expert; • f. raise victim's recent sexual intercourse with another man.

6. Cumulative error.

**Certiorari review on direct appeal - *Finlayson*, 2000 UT 10; (Doc. No. 66-1).**

1. Merger issue (analyzed under ineffective assistance of counsel). 2. Jury-selection claim.

3. Exclusion of expert testimony on Japanese culture. 4. Prosecutorial misconduct as to improper

closing-argument comments. 5. Ineffective assistance of counsel: • a. merger issue; • b. not

objecting to prosecutor's closing statement; • c. inadequately impeaching victim with past

inconsistencies due to counsel not obtaining certified preliminary-hearing transcript. 6.

Cumulative error.

**Second direct appeal – *State v. Finlayson* 2002 UT App 36.**

1. Whether, during resentencing, Petitioner was prejudiced by trial court's failure to resolve inconsistencies between trial testimony and official version of offense in pre-sentence report?

2. Victim's entire testimony at trial was improper hearsay (read from notes she prepared (Doc. No. 54-9, at 6)).

**Second certiorari petition - *Finlayson*, 2004 UT 10.**

1. Did Utah Court of Appeals err in applying Utah statute and trial-court jurisdiction to resentencing?

2. Victim's entire testimony at trial was improper hearsay. (Doc. No. 54-9, at 6)).

**State post-conviction application - *Finlayson v. State*, No. 050901691 (Utah 3d Dist. Ct. filed Jan. 27, 2005) - issues listed below are only those similar to and relevant to current federal habeas petition.**

1. Ineffective assistance of trial counsel for failing to: • a. use victim's statement to Detective Chandler to impeach testimony inconsistencies and present proper arguments to overcome prosecutor's objections to impeachment; • b. present evidence of standing agreement between State and public defender's office  (pre-trial counsel, Robert Steele) to allow use of uncertified transcript and try to introduce uncertified transcript; • c. investigate facts, thus coming to trial unprepared (i.e., did not seek DNA test, show lack of gun, and object to prosecutor's introduction of misleading evidence); • d. move to suppress items seized from Petitioner's apartment; • e. submit for decision motions in limine by pre-trial counsel; • f. lay proper foundation for expert testimony about culture and language; • g. lay proper foundation for rebuttal character witnesses, thus unable to use Japanese women to testify of consensual sex with Petitioner to undercut victim's testimony; • h. object to victim reading from notes.

2. Prosecutorial misconduct: a. State failed to disclose • all evidence obtained through boyfriend; • November 1994 interview; • victim-witness coordinator did victim's written script; • audio of December 1994 Detective Chandler interview. b. During trial • objected to use of uncertified transcript; • stated at sidebar, for jury to hear, that Petitioner was lying.

3. Ineffective assistance of appellate counsel because failed to: a. raise issues of trial-counsel ineffective assistance when trial counsel failed to • lay proper foundation for expert on Japanese culture and language; • recognize conflict of interest with Salt Lake Legal Defender Association;

• obtain certified, unbiased Japanese interpreter; • ensure exclusion of evidence per motion to suppress; • ensure availability of preliminary-hearing transcript to impeach victim at trial.
b. support motion for remand under Utah R. App. P. 23B with evidence.

**Post-conviction appeal - *Finlayson v. State*, 2015 UT App 31.**

"Finlayson asserts that the district court abused its discretion by dismissing his petition for post-conviction relief for failure to prosecute." *Id.* at ¶ 6.

**Post-conviction certiorari petition - *Finlayson v. State*, 362 P.3d 1256 (table).**

1. "Did [Utah] Court of Appeals err in ignoring Finlayson's pro se claims?" (Doc. No. 54-32, at 17.) 2. "Did . . . Utah Court of Appeals err in issuing crucial legal conclusions [regarding pro se claims] without providing any factual support, or foundation, for said conclusions?" (*Id.* at 26.)

## II. GROUNDS RAISED IN CURRENT FEDERAL PETITION

1. Ineffective assistance of trial counsel because failed to:

A. object to prosecutor's closing-statement remarks that • Petitioner had gun; • State did DNA testing; • Petitioner had been honing story.[1] [Exhausted; treated below on merits.]

B. get certified preliminary hearing transcript to impeach victim trial testimony. [Exhausted; treated below on merits.]

C. use victim's statement to Detective Chandler to impeach inconsistencies in her trial testimony and present proper arguments to overcome prosecutor's objections to impeachment questions. [Procedurally defaulted in state court, as discussed below.]

---

[1] In Reply to State's Response to Amended Petition, for the first time, Petitioner cursorily mentions--i.e., provides no analysis of--three other instance of prosecutorial misconduct during closing argument. These will not be treated further.

D. present evidence of standing agreement between State and public defender's office (pre-trial counsel, Robert Steele) to allow use of uncertified transcript and try to introduce uncertified transcript. [Procedurally defaulted in state court, as discussed below.]

E. investigate facts, thus coming to trial unprepared (i.e., did not seek DNA test, show Petitioner did not have gun, and object to prosecutor's introduction of misleading evidence). [Withdrawn in Petitioner's Reply to State's Response to Amended Petition, (Doc. No. 66, at 73). Not treated further in this Order.]

F. retain expert in Japanese language and culture. [Withdrawn in Petitioner's Reply to State's Response to Amended Petition, (Doc. No. 66, at 73). Not treated further in this Order.]

G. cross-examine victim as to sex with other man. [Exhausted; treated below on merits.]

H. move to suppress items seized from Petitioner's apartment. [Procedurally defaulted in state court, as discussed below.]

I. challenge aggravated kidnaping charge before trial. [Withdrawn in Petitioner's Reply to State's Response to Amended Petition, (Doc. No. 66, at 81). Not treated further in this Order.]

J. submit for decision motions in limine by pre-trial counsel. [Procedurally defaulted in state court, as discussed below.]

K. lay proper foundation for expert testimony, thus losing chance to introduce exculpatory evidence of culture and language. [Procedurally defaulted in state court, as discussed below.]

L. lay proper foundation for rebuttal character witnesses, thus unable to use Japanese women to testify of their consensual sex with Petitioner to undercut victim's testimony. [Procedurally defaulted in state court, as discussed below.]

M. object to victim reading from notes during testimony. [Procedurally defaulted in state court, as discussed below.]

N. (avoid) cumulative effects. [Exhausted; treated below on merits.]

2. Prosecutorial misconduct:

A. closing-argument remarks (e.g., Petitioner with gun and DNA test). [Unexhausted and procedurally defaulted on federal ground, as discussed below.]

B. State failed to disclose • all evidence from boyfriend; • November 1994 interview; • victim-witness coordinator did written script for victim; • audio recording from December 1994 Detective Chandler interview; • information that victim was living with translator [Inexcusably procedurally defaulted in state court.]

C. during trial • objected to use of uncertified transcript; • stating at sidebar, for jury to hear, that Petitioner was lying. [Inexcusably procedurally defaulted in state court.]

3. Ineffective assistance of appellate counsel because failed to:

A. raise issues of trial-counsel ineffective assistance when trial counsel failed to • lay proper foundation for Japanese culture and language expert; • recognize conflict of interest with Salt Lake Legal Defender Association pre-trial counsel who did not get audiotape of December 1994 interview; • obtain certified Japanese interpreter; • ensure evidence exclusion per motion to suppress; • ensure availability of preliminary-hearing transcript to impeach victim.

B. support motion for remand under Utah R. App. P. 23B with evidence. [Inexcusably procedurally defaulted in state court.]

4. Cumulative error. [Exhausted; treated below on merits.]

### III. ANALYSIS

### A. Anticipatory Procedural Bar

The Court first addresses Petitioner's claim that Utah Court of Appeals applied the wrong standard to reject his direct-appeal claim of prosecutorial misconduct in closing argument. The prosecutor made three improper comments to which defense counsel did not object. Petitioner appealed using a plain-error argument based on state law. (Doc. No. 11-14, at 40-45.) In denying the argument, the court of appeals followed a state-law analysis. *Finlayson*, 956 P.2d at 292-93.

Now, on federal habeas review, Petitioner recasts his argument as due-process denial under the Federal Constitution. (Doc. No. 66, at 97-99.) However, Petitioner had not fairly presented the constitutional claim to the Utah Court of Appeals as he must to exhaust his claim. *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (stating claims must be presented to state courts in manner sufficient to put courts on notice of federal constitutional claim); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.").

"Anticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Moore v. Schoeman*, 288 F.3d 1231, 1233, n.3 (10th Cir. 2002) (quotations omitted). This applies here. By statute, issues that could have been, but were not, raised on appeal are foreclosed from further treatment in Utah courts. Utah Code Ann. § 78B-9-106(c) (2019). This claim is thus procedurally defaulted for federal habeas purposes. *See Davis v. Schnurr*, No. 19-3123, 2019 WL 3937358, *3 (10th Cir. Aug. 20, 2019) (unpublished).

Responding to the procedural bar, Petitioner (cursorily) argues that his appellate counsel was ineffective for failing to brief this issue as a constitutional claim, thus providing cause to excuse his default. (Doc. No. 66, at 98.) "But an ineffective assistance of counsel claim must itself be exhausted before it can provide 'cause' to excuse procedural default." *Davis*, 2019 WL 3937358, at *3 (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 489 (1986)). Petitioner has not separately raised the issue of ineffective assistance of appellate counsel for failing to challenge the prosecutor's comments under the Federal Constitution. *See id*. Petitioner's "ineffective-assistance argument is therefore itself procedurally defaulted and cannot provide 'cause' to excuse his default." *Id*.

In sum, Petitioner's prosecutorial-misconduct claim based on the Federal Constitution about inappropriate comments in closing argument is procedurally defaulted. And he points to no valid cause to excuse the default. This claim is thus denied and will not be considered further.

### B. Procedural Default

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings

within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 747-748 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g., Walker v. Martin*, 562 U.S. 307, 316 (2011); *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S. at 750.

*Martinez*, 566 U.S. at 9-10.

Under *Coleman*, "an attorney's errors in a postconviction proceeding do not qualify as cause for a default." *Id*. at 8 (citing *Coleman*, 501 U.S. at 754-55). However, *Martinez* recognized "a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel at trial." *Id*. at 9. In *Trevino v. Thaler*, *Martinez* was "expanded" to apply to "any state 'where the procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of counsel on direct appeal.'" *Lafferty v. Crowther*, No. 2:07-CV-322, 2016 U.S. Dist. LEXIS 138845, at *3 (D. Utah Oct. 5, 2016) (citing *Trevino v. Thaler*, 569 U.S. 413, 428-29 (2013)). And, in *Lafferty*, a judge of this Court decided that *Trevino* and *Martinez* apply "to Utah's procedural framework." *Id*. at * 4-5.

Petitioner urges us to follow *Lafferty*, while Respondent argues *Lafferty* does not control and *Trevino* and *Martinez* do not apply. It is true that "[t]he doctrine of stare decisis does not

compel one district court judge to follow the decision of another." *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991). "Where a second judge believes that a different result may obtain, independent analysis is appropriate." *Id*. Having thoroughly reviewed the issue, this judge "believes that a different result . . . obtain[s]" and therefore provides an "independent analysis." *Id*.

### 1. Issues Dismissed in Utah State Court for Failure to Prosecute

1. Ineffective assistance of trial counsel because failed to: C. use victim's statement to Detective Chandler to impeach testimony inconsistencies and present proper arguments to overcome objections; D. present evidence of standing agreement between State and public defender's office to allow use of uncertified transcript and try to introduce uncertified transcript; H. move to suppress items seized from Petitioner's home; J. submit for decision pre-trial counsel's motions in limine; K. lay proper foundation for expert testimony of culture and language; L. lay proper foundation for rebuttal character witnesses to allow use of Japanese women's testimony of their consensual sex with Petitioner to undercut victim's testimony; M. object to victim testifying from notes.

2. Prosecutorial misconduct: B. State failed to disclose • all evidence from boyfriend • November 1994 interview • victim-witness coordinator did victim's written script • audio from December 1994 Detective Chandler interview • victim living with translator; C. during trial • objected to uncertified-transcript use • at sidebar, for jury to hear, stated Petitioner was lying.

3. Ineffective assistance of appellate counsel because failed to: A. raise trial-counsel ineffective assistance when trial counsel failed to • lay proper foundation for Japanese culture and language expert • recognize conflict of interest with Salt Lake Legal Defender Association

pre-trial counsel • obtain certified Japanese interpreter • ensure evidence exclusion per motion to suppress • ensure availability of preliminary-hearing transcript to impeach victim; B. support motion for remand under Utah R. App. P. 23B with evidence.

Utah district court dismissed all these claims under Utah Rule of Civil Procedure 41(b), citing failure to prosecute, and was affirmed by the Utah Court of Appeals. *Finlayson*, 2015 UT App 31, at ¶ 22, *cert. denied*, 326 P.3d 1256. The Utah state courts "declined to hear [these claims] because the prisoner failed to abide by a state procedural rule." *Martinez*, 566 U.S. at 9. These claims could thus be procedurally barred here "if . . . the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Id.*

Rule 41(b) is clearly a state rule of civil procedure, a nonfederal ground for dismissal. It is also firmly established and consistently followed--e.g., a cluster of cases, including a guiding case with five factors, *Westinghouse*, 544 P.2d 876 (Utah 1975), was developed under which to analyze the rule's application. *See, e.g., Velander v. LOL of Utah , LLC*, 2015 UT App 171, ¶ 11; *Cheek v. Clay Bulloch Const., Inc*. 2011 UT App 418, ¶ 7; *Washington v. Kraft*, 2010 Utah App 266, ¶ 15; *Heerman v. State*, 2004 UT App 463, ¶ 1 (post-conviction petition); *Country Meadows Convalescent Ctr. v. Utah Dep't of Health*, 851 P.2d 1212, 1215 (Utah Ct. App. 1993).

## 2. Lack of Cause to Excuse Procedural Default

So, Utah's procedural bar on cases when a plaintiff has failed to prosecute is based on "an independent and adequate state ground." *See Martinez*, 566 U.S. at 10. Thus, this court may evaluate the claims in this section "only if [Petitioner] can establish cause to excuse the procedural default." *Id*. And Petitioner asserts that *Martinez*, *id*. at 1, and its progeny, *Trevino*,

569 U.S. at 413, and *Lafferty*, 2016 U.S. Dist. LEXIS 138845, may supply the cause. The Court

concludes otherwise: *Martinez*, *Trevino*, and *Lafferty* are inapplicable to Utah's procedural

framework and therefore do not rescue these issues from the procedural bar that takes them out

of this Court's purview.

First off, though, the Court notes that *Martinez* and its progeny do not apply in any event

to issues outside ineffective assistance of trial counsel:

> In *Martinez*, 566 U.S. at 1, and *Trevino*, 569 IU.S. at 413, this
> Court announced a narrow exception to *Coleman*'s general rule.
> That exception treats ineffective assistance by a prisoner's state
> postconviction counsel as cause to overcome the default of a single
> claim--*ineffective assistance of trial counsel*--in a single context--
> where the State effectively requires a defendant to bring that
> claims in state postconviction proceedings rather than on direct
> appeal.

*Davila v. Davis*, 137 S. Ct. 2058, 2062-63 (2017) (emphasis added).

Having no other cause to overcome procedural bar of issues of standalone prosecutorial

misconduct and ineffective assistance of appellate counsel, the Court now dismisses the

following issues: 2.B., 2.C., 3.A. and 3.B. *See Pravatt v. Carpenter*, 928 F.3d 906, 934 (10th Cir.

2019). So these issues were never in play to be excused for cause under *Martinez* and progeny.

The seven grounds of ineffective assistance of trial counsel are the issues that are not

rescued from procedural default by *Martinez* and *Trevino*: Trial counsel's failure to: 1.C. use

victim's statement to Detective Chandler to impeach her; 1.D. ensure use of preliminary-hearing

transcript to impeach victim; 1.H. move to suppress seized evidence; 1.J. follow up on motions

filed by pre-trial counsel; 1.K. lay proper foundation for expert testimony; 1.L. lay proper

foundation for rebuttal character witnesses; and 1.M. object to victim reading from notes.

### 3. Inapplicability of *Martinez* and *Trevino*

In determining *Martinez*, 566 U.S. 1, and *Trevino,* 569 U.S. 413, do not apply to Utah's

procedural format, the Court follows the template of *Fairchild v. Trammell*, 784 F.3d 702 (10th

Cir. 2015), in which the Tenth Circuit concluded that *Martinez* and *Trevino* do not apply in

Oklahoma. *Lafferty*, 2016 U.S. Dist. LEXIS 138845, at 4 (citing *Fairchild*, 584 F.3d 702). It is

worth noting at the outset that *Lafferty* admits Utah's circumstances are similar to those in

Oklahoma. *Id.*

The Tenth Circuit gives the following context for its analysis of *Martinez* and *Trevino*

vis-à-vis Oklahoma's procedural format:

> The Supreme Court held in *Coleman* that ineffective assistance of
> counsel in postconviction proceedings does not establish cause for
> the procedural default of a claim. *See* 501 U.S. at 756-57. But the
> Supreme Court's recent decisions in *Martinez*, 560 U.S. 1, and
> *Trevino*, 569 U.S. 413, revised that rule with respect to cause for
> claims of ineffective assistance of counsel.
>       The Court's concern in both cases was "initial-review
> collateral proceeding[s]," which it defined as "collateral
> proceedings which provide the first occasion to raise a claim of
> ineffective assistance at trial." *Martinez*, 560 U.S. at 8. It held
> in *Martinez* that "[i]nadequate assistance of counsel at initial-
> review collateral proceedings may establish cause for a prisoner's
> procedural default of a claim of ineffective assistance at
> trial." *Id.* The context was Arizona law, which prohibited claims of
> ineffective assistance of trial counsel on direct appeal and required
> that such claims be raised in state postconviction proceedings. *See
> id.* at 1314. The Court observed that in Arizona, "the collateral
> proceeding is in many ways the equivalent of a prisoner's direct
> appeal as to the ineffective-assistance claim," *id*. at 1317, and that
> "if counsel's errors in an initial-review collateral proceeding do not
> establish cause to excuse the procedural default in a federal habeas
> proceeding, no court will review the prisoner's claims," *id*. at
> 1316. *Martinez* held that "a procedural default will not bar a
> federal habeas court from hearing a substantial claim of ineffective
> assistance at trial" when state law provides that "claims of
> ineffective assistance of trial counsel must be raised in an initial-

review collateral proceeding" and "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id*. at 1320.

*Trevino* took the Supreme Court one step further, holding that the rule in *Martinez* applied even when the state provided a theoretical opportunity to raise on direct appeal a claim of ineffective assistance of trial counsel, but the design and operation of the state's procedural requirements for doing so often made that theoretical possibility a practical impossibility. *See* 133 S. Ct. at 1915, 1921. In *Trevino* a Texas state-court jury convicted Trevino of capital murder and the trial court imposed the death penalty based on the jury's findings after a sentencing hearing. *See id.* at 1915. Trevino's new appointed counsel did not raise on direct appeal a claim of ineffective assistance of trial counsel during the sentencing hearing. *Id.* A different attorney appointed to represent Trevino on state postconviction review raised a claim that trial counsel was constitutionally ineffective during the sentencing phase of Trevino's trial, but the attorney did not claim that trial counsel's ineffectiveness included inadequately investigating and presenting mitigation evidence. *See id.* After relief was denied on state postconviction review, Trevino sought habeas relief in federal court, where he was represented by another new appointed counsel. *See id.* That attorney uncovered mitigation evidence that had not been presented at trial and raised for the first time a claim that Trevino's trial counsel was ineffective during the sentencing phase by failing to adequately investigate and present this other mitigation evidence. *See id.* at 1916. The federal court stayed proceedings to permit Trevino to raise this claim in state court, but the state court held that the claim was procedurally defaulted because it had not been raised on initial state postconviction review. *See id.* The federal district court denied the claim of ineffective assistance of counsel on the ground that an independent and adequate state ground (failure to raise the claim on initial state postconviction review) barred federal habeas review. *See id.* The Fifth Circuit affirmed. *See id.*

The Supreme Court reversed. It noted that "the inherent nature of most ineffective assistance of trial counsel claims means that the trial court record will often fail to contain the information necessary to substantiate the claim." *Id*. at 1918 (brackets and internal quotation marks omitted). But in Texas the only way for a defendant to supplement the record on appeal is by filing in the trial court a motion for a new trial within 30 days of sentencing. *See id.* The trial court then has to decide the motion within 75 days of sentencing. *See id.* The trial transcript, however,

is not due until 120 days after sentencing, and the time may be extended. *See id.* The Supreme Court concluded that this mechanism "is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point." *Id.* (internal quotation marks omitted). Trevino's appellate counsel was appointed eight days after sentencing, which meant that she had 22 days to move for a new trial. *See id.* at 1919. Counsel may have had 45 more days to gather evidence in support of the motion (before the trial court had to issue a decision), but she would not have had access to the trial transcript, which did not become available until seven months after trial. *See id.* As the Court said, "It would have been difficult, perhaps impossible, within that time frame to investigate Trevino's background, determine whether trial counsel had adequately done so, and then develop evidence about additional mitigating background circumstances." *Id.* The Court concluded that "where, as here, state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our holding in *Martinez* applies." *Id.* at 1921.

*Fairchild*, 784 F.3d at 720-21.

**4. Using *Fairchild* analysis to compare Oklahoma procedural framework with Utah's**

    **a. Comparing procedural rules**. In Oklahoma, "[a] claim of ineffective assistance can be raised in the opening brief on appeal. And the brief can be accompanied by a request to supplement the record." *Id*. at 721 (citing Okla. Ct. Crim. App. R. 3.11). Similarly, in Utah, claims of ineffective assistance of trial counsel can "be filed at the time of the filing of the appellant's brief, in the form of a "motion to remand for findings necessary to determination of ineffective assistance of counsel claim," which essentially is a request to supplement the record. Utah R. App. P. 23B; *see, e.g., State v. Ring*, 2018 UT 19, ¶ 1 (evaluating ineffective assistance of trial counsel claims on direct appeal); *State v. Griffin*, 2016 UT 33, ¶ 1 (same); *State v. Nelson*, 2015 UT 62, ¶ 1 (same); *State v. Lucero*, 2014 UT 15, ¶ 2 (same); *State v. Ott*, 2010 UT

1, ¶ 1; *State v. King*, 2008 UT 54, ¶ 2 (same); *State v. Alinas*, 2007 UT 83, ¶ 1 (same); *State v. Hales*, 2007 UT 14, ¶ 3 (same).

Also in Oklahoma, there is enough time on direct appeal to investigate possible ineffective-assistance-of-trial-counsel claims "and the trial transcript is available for much of that time." *Fairchild*, 784 F.3d at 721.

> The opening brief is not due until 120 days from the date the Oklahoma Court of Criminal Appeals (OCCA) receives the trial record and transcripts, *see* Okla. Stat. tit. 21, § 701.13(D); Rule 9.3(A), and that deadline may be extended up to an additional 60 days by a single OCCA judge (the Presiding or Vice-Presiding Judge), *see* Rule 3.4(D)(2)(a), and possibly even further upon the approval by the full court, *see id*. The record and transcripts are not required to be filed in the trial court until six months after sentencing, *see* § 701.13(A); Rule 9.2(C)(1); id. 9.2(e), and the court reporter's deadline to file transcripts may be extended upon a showing of just cause, *see* Rule 9.2(C)(2).

*Fairchild*, 784 F.3d at 721-22.

Meanwhile, in Utah, "[w]ithin 10 days after filing the notice of appeal, the appellant shall order the transcript." Utah R. App. P. 11(e)(1). Upon appellant's payment for the requested transcript, the appellate court arranges preparation of the transcript which "shall be completed and filed within 30 days after that date." *Id*. 12(a). If needed, the transcriber may request "an enlargement of time in which to file the transcript." *Id*. 12(a)(3). When finished, the transcript becomes part of the "record on appeal." Utah R. App. P. 11(a). The record on appeal is indexed by the trial-court clerk; "a single record shall be transmitted" to the appeals court. (*Id*. 11(b) & (c).) Upon receiving the index, the appellate court gives notice to the parties of "the date on which the appellant's brief is due pursuant to Rule 26." *Id*. 13. From the date of that notice, the appellant has forty days to file the initial brief. *Id*. 26(a). By the parties' stipulation, that time

may be extended for thirty days. *Id*. And, there are provisions for further time extensions "for good cause shown." *Id*. at 22(b)(2). Thus, the procedure in Utah is possibly even more conducive than Oklahoma's to allowing identification of instances of ineffective assistance of trial counsel. The transcript is generally completed before the opening brief deadline is set. Moreover, there are chances for time extension when needed.

   **b. Comparing how each state's procedures worked in actual case**. In *Fairchild*, the time line was as follows:

> [Counsel] was appointed on February 2, 1996, the day Defendant was sentenced, to represent Defendant on direct appeal. Counsel received the record and transcripts ten months later, and Defendant's brief was due (after two 3-day extensions) six months later, on Monday June 2, 1997. Thus, Oklahoma procedure allowed appellate counsel to file the brief, along with a Rule 3.11 motion to supplement the trial record, 16 months after Defendant was sentenced, with access to the transcript and record for nearly six months.

*Fairchild*, 784 F.3d at 722.

   In this case, judgment was entered on October 13, 1995. (Doc. No. 54-10, at 4.) Notice of appeal was filed on October 31, 1995. (*Id*.) Five transcripts were requested on March 4, 1996. (*Id*. at 5.) Transcripts were filed on March 29 through April 30, 1996. (*Id*.) The index and record from the trial court were sent to the Utah Court of Appeals on July 11-12, 1996. (*Id*.) More transcripts were requested and filed on August 28, 1996. (*Id*. at 6.) Appellant's brief was first due on October 29, 1996, but an extension was given to November 29, 1996. (*Id*. at 6-7.) Motion to supplement the record through Utah Rule of Appellate Procedure 23B was denied on January 15, 1997. (*Id*. at 7.) Appellant's brief was submitted on April 28, 1997. (Doc. No. 54-14, at 58.) Thus, Utah procedure allowed appellate counsel to file the brief, along with a 23B motion to

supplement the trial record, about eighteen months after Defendant was sentenced, with access to all requested transcripts and the record for almost eight months.

The timelines in each state are highly comparable.

**c. Comparing state case law showing ability to raise on direct appeal claims of ineffective assistance of trial counsel**. The Tenth Circuit pointed out in *Fairchild*, 784 F.3d 702, that "[n]umerous appeals during the years preceding and following the filing of Defendant's appellate brief with the OCCA show that counsel could raise claims of ineffective assistance of trial counsel on direct appeal. Id. at 722. This assertion was borne out by a string citation of twelve Oklahoma appellate cases. *Id*. at 722-23 (citations omitted).

Utah too has a wealth of cases--before and after briefing in this case--showing a robust history of counsel raising claims of ineffective assistance of counsel on direct appeal, impressively resulting sometimes in reversal on that very ground. *See, e.g., State v. Ring*, 2018 UT 19, ¶ 34 (concluding no trial-counsel ineffective assistance on issues of failure to object); *State v. Griffin*, 2016 UT 33, ¶ 1, 70 (concluding no trial-counsel ineffective assistance on issues of conflict of interest and failure to investigate and introduce evidence); *State v. Nelson*, 2015 UT 62, ¶ 13 (concluding no trial-counsel ineffective assistance on issues of improper evidence presentment; failure to impeach, investigate, and object; and jury selection); *State v. Lucero*, 2014 UT 15, ¶ 41 (concluding no trial-counsel ineffective assistance on issues of stipulation and failure to object and present certain evidence); *State v. Ott*, 2010 UT 1, ¶ 1 (concluding trial-counsel ineffective assistance on issue of failure to object); *State v. King*, 2008 UT 54, ¶ 2 (concluding no trial-counsel ineffective assistance on issue of failure to investigate); *State v. Alinas*, 2007 UT 83, ¶ 41 (concluding no trial-counsel ineffective assistance on issue of failure to

investigate); *State v. Hales*, 2007 UT 14, ¶ 3 (concluding trial-counsel ineffective assistance on issue of failing to retain expert); *State v. Goddard*, 871 P.2d 540, 546 (Utah 1994) (concluding no trial-counsel ineffective assistance on issue of failure to object); *State v. Germonto*, 868 P.2d 50 (Utah 1993) (concluding no trial-counsel ineffective assistance on issues of failure to present certain defense and to object); *State v. Templin*, 805 P.2d 182, 185, 189 (Utah 1990) (concluding trial-counsel ineffective assistance on issue of failure to investigate); *State v. Bonds*, No. 20180238-CA, 2019 Utah. App. LEXIS 162, at *15, 41, 45 (Utah Ct. App. Sept. 26, 2019) (concluding trial-counsel ineffective assistance on issues of failure to object).

**d. Conclusion**. Like in *Fairchild* analyzing Oklahoma's procedural framework, Petitioner "has not shown that the 'design and operation' of [Utah's] procedural framework 'make[] it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal.'" *Fairchild*, 784 F.3d at 723 (quoting *Trevino*, 569 U.S. at 429).

With *Martinez* and *Trevino* inapplicable to Utah, Petitioner has failed to show cause for the procedural default of his ineffective-assistance-of-trial-counsel claims brought on state-post-conviction review and dismissed on the procedural ground of failure to prosecute. Those claims are therefore all procedurally defaulted on federal habeas review. They are not considered further and are dismissed.

## C. Merits Analysis

Five claims remain to be reviewed on the merits: 1. Ineffective assistance of trial counsel because A. did not object to prosecutor's improper closing-statement remarks; B. did not get certified preliminary hearing transcript to use to impeach victim trial testimony; G. did not cross-

examine victim regarding sexual intercourse with other man; N. of cumulative effects. 4. Cumulative error.

These claims were all denied on the merits by the Utah Court of Appeals in Petitioner's first direct appeal. *Finlayson*, 956 P.2d 283. Though Petitioner raised them in a certiorari petition, the Utah Supreme Court did not address these claims on certiorari review. *Finlayson*, 2000 UT 10. The Court thus reviews the Utah Court of Appeals's opinion under the federal habeas standard of review.

## 1. Standard of Review

The standard of review applied in federal habeas cases is found in § 2254, under which this habeas petition is filed. It states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.S. § 2254(d) (2019).

The Court's inquiry centers on whether the Utah Court of Appeals's rejection of Petitioner's claims "was contrary to, or involved an unreasonable application of, clearly established Federal law. *Id*. This "'highly deferential standard,'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations omitted); *see also Littlejohn v. Trammell*, 704 F.3d 817, 824 (10th Cir. 2013), is "'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas

relief functions as a '"guard against extreme malfunctions in the state criminal justice systems,"' and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43-44 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment))). The Court is not to determine whether the court of appeals's decision was correct or whether this Court may have reached a different outcome. *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). And, "[t]he petitioner carries the burden of proof." *Cullen*, 131 S. Ct. at 1398.

Under *Carey v. Musladin*, 549 U.S. 70 (2006), the first step is determining whether clearly established federal law exists relevant to Petitioner's claims. *House*, 527 F.3d at 1017-18; *see also Littlejohn*, 704 F.3d at 825. Only after answering yes to that "threshold question" may the Court go on to "ask whether the state court decision is either contrary to or an unreasonable application of such law." *Id.* at 1018.

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*Id.* at 1016.

Further, "in ascertaining the contours of clearly established law, we must look to the '*holdings* as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Littlejohn*, 704 F.3d at 825 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (emphasis added) (citations omitted)). And, in deciding whether

relevant clearly established federal law exists, this Court is not restricted by the state court's analysis. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("[F]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

 If this threshold is overcome, this Court may grant habeas relief only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case." *Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). This deferential standard does not let a federal habeas court issue a writ merely because it determines on its own that the state-court decision erroneously applied clearly established federal law. *See id.* "'Rather that application must also be unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 411). Indeed, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington*, 131 S. Ct. at 785 (emphasis in original) (quoting *Williams*, 529 U.S. at 410).

 This highly demanding standard was meant to pose a sizable obstacle to the habeas petitioner. *Id.* at 786. Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* It maintains power to issue the writ when no possibility exists that "fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents. It goes no farther." *Id.* To prevail in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. It is against this backdrop that this Court now applies the standard of review to the following issues.

## 2. Application of Standard of Review

### a. Ineffective Assistance of Trial Counsel

The exhausted claims here stem from counsel's alleged failures, (1) during the prosecutor's closing statement, to object to the prosecutor's references to Petitioner having a gun; the State doing DNA testing; and Petitioner "honing" his testimony before trial; (2) to procure a certified transcript to use in cross examining the victim at trial; and (3) cross-examine the victim about having sex with another man.

Remembering that review is tightly restricted by the federal habeas standard of review, this Court observes that the Utah Court of Appeals selected the correct governing legal principle with which to analyze the ineffective-assistance-of-counsel issue. *Finlayson*, 956 P.2d at 293 (quoting *State v. Winward*, 941 P.2d 627, 635 (Utah Ct. App. 1997) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)); *State v. Hall*, 946 P.2d 712, 719 (Utah Ct. App. 1997) (quoting *Strickland*, 466 U.S. at 694). It is the familiar two-pronged standard of *Strickland,* 466 U.S. 668: (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms"; and, (2) prejudice to the defense caused by counsel's deficient performance. *Id.* at 687-88. The prejudice element requires a showing that errors were so grave as to rob the petitioner of a fair proceeding, with a reliable, just result. *Id*.

As the standard of review requires, the Court now analyzes whether the Utah Court of Appeals's application of *Strickland* was reasonable.

### i. Closing statement

In evaluating this issue under Supreme Court precedent, the court of appeals stated:

> Defendant argues that he did not receive effective assistance of counsel based on his trial counsel's failure to object to the prosecutor's improper statements. This court previously held that a trial counsel's failure to object to a prosecutor's closing argument did not satisfy the prejudice prong of the ineffective assistance of counsel test. *See Winward*, 941 P.2d at 635. The court stated, "If appellant's counsel had objected, the trial court would have had the opportunity to issue a curative instruction, which is ordinarily presumed on appeal to be effective." *Id.* "Thus, even if the objection had been interposed, we cannot conclude the outcome would have been different." *Id.* We hold that the reasoning in *Winward* is applicable here and therefore reject defendant's claim of ineffective assistance of counsel on this basis.

*Finlayson*, 956 P.2d at 293.

*Winward*, 941 P.2d 627, cited by the court, analyzed the prejudice angle this way:

> [E]ven had appellant's counsel objected, it is unlikely that the outcome would have been different. *See Strickland*, 466 U.S. at 695; *State v. Garrett*, 849 P.2d 578, 580 (Utah Ct. App. 1993). If appellant's counsel had objected, the trial court would have had the opportunity to issue a curative instruction, which is ordinarily presumed on appeal to be effective. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *State v. Menzies*, 889 P.2d 393, 401 (Utah 1994), *cert. denied*, 513 U.S. 1115 (1995). Thus, even if the objection had been interposed, we cannot conclude the outcome would have been different.

*Winward*, 941 P.2d at 635.

Petitioner argues that "[i]n examining the Sixth Amendment claim based on the failure to object, the state court applied a blanket holding, contrary to established Supreme Court law, that there could never be prejudice" because an objection would have triggered a curative instruction. (Doc. No. 66, at 50.) This is not true; there is no "blanket holding," but instead application of a presumption in absence of evidence to rebut the presumption, which would have been

Petitioner's burden. With that burden apparently unmet, the court of appeals had no choice but to apply the presumption.

The Court has reviewed Petitioner's briefs to the court of appeals and sees four cursory, declarative sentences devoted to whether failure to object to the prosecutor's closing-argument misconduct was prejudicial:

> Mr. Finlayson has been prejudiced. By failing to object, counsel allowed the prosecutor to impugn Mr. Finlayson's credibility by improper means. Had counsel properly prevented this line of argument, it is reasonably likely that the jury would have credited Mr. Finlayson's testimony over that of the victim. Even if the trial court had improperly overruled the objection, Mr. Finlayson is still prejudiced by the heightened burden of establishing plain error on appeal.

(Doc. No. 54-14, at 47-48.)

These four sentences do not provide any analysis of the prejudice prong, let alone address the presumption that a curative instruction would have healed any potential prejudice to Petitioner. Petitioner states that "a reviewing court must not fail to consider the impact of the prosecutor's misconduct on the jury." (Doc. No. 66, at 50.) But it is Petitioner who failed to consider that impact when the time was ripe on direct appeal.

Petitioner goes on to quote a Sixth Circuit case, which he uses to try to establish his own "blanket holding" that a situation like this one results in "constructive denial of counsel." *Girts v. Yanai*, 501 F.3d 743, 757 (6th Cir. 2007). The Court declines to consider Sixth Circuit precedent when review here is tightly circumscribed by a single duty to ensure state court adherence to "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.S. § 2254(d) (2019).

Under the standard of review, Petitioner's argument that the court of appeals got this wrong is not well taken. He is stuck with the scope of his argument to the state appellate court and may not expand it on federal habeas review.

### ii. Certified transcript

In evaluating this issue under Supreme Court precedent, the court of appeals stated:

> Defendant claims that trial counsel was ineffective because he failed to procure a certified transcript of the preliminary hearing. Because he did not have a certified transcript, he was unable to refer to the transcript of the preliminary hearing during his cross-examination of the victim. Defendant claims that this deficiency prevented trial counsel from impeaching the witness by emphasizing the inconsistencies between the victim's testimony at the preliminary hearing and at trial. We reject this argument because, notwithstanding trial counsel's inability to refer to the preliminary hearing transcript, he was not prohibited from cross-examining the victim regarding her inconsistencies. *Cf. State v. Moton*, 749 P.2d 639, 644 (Utah 1988) (discussing right to confront and cross-examine adverse witness).

*Finlayson*, 956 P.2d at 293.

*Moton*, 749 P.2d 639, the case cited by the court of appeals, refers to United States Supreme Court case, *Davis v. Alaska*, 415 U.S. 308, 316 (1974), stating, "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Moton* also cites a state case that cites a federal court of appeals case that cites United States Supreme Court cases for the principle that "[t]he Sixth Amendment right to confrontation . . . require[s] only that the accused be permitted to introduce all relevant and admissible evidence." *United States v. Kasto*, 584 F.2d 268, 272 (8th Cir. 1978) (citing *United States v. Nixon*, 418 U.S. 683, 711 (1974); *Davis*, 415 U.S. at 316).

Regarding this section, Petitioner's reply to the State's response in this Court cites to several United States Supreme Court cases but not one that is on-point (and at odds with the court of appeals's result). *See Crawford v. Washington*, 541 U.S. 36 (2004) (holding Confrontation Clause violation when witness's tape-recorded statement admitted to evidence with no opportunity for cross-examination); *Crane v. Kentucky*, 476 U.S. 683 (1986) (holding exclusion of testimony about circumstances of defendant's confession deprived him of fundamental constitutional right to fair opportunity to present defense); *California v. Trombetta*, 467 U.S. 479 (1984) (holding Fourteenth Amendment's Due Process Clause does not require law enforcement agencies to preserve breath samples to introduce breath-analysis-test results at trial); *Davis*, 415 U.S at 309 (considering whether Confrontation Clause requires defendant in criminal case be allowed to impeach credibility of prosecution witness by cross-examination directed at possible bias deriving from witness's probationary status as juvenile delinquent when such impeachment would conflict with State's asserted interest in preserving confidentiality of juvenile adjudications of delinquency); *Chambers v. Mississippi*, 410 U.S. 284 (1973) (holding due-process violation when defendant not allowed to cross-examine witness based on state rule that party may not impeach his own witness and to call witnesses whose testimony was excluded based on hearsay); *Washington v. Texas*, 388 U.S. 14 (1967) (holding Sixth Amendment violated by state procedural statute providing that persons charged as principals, accomplices, or accessories in the same crime cannot be introduced as witnesses for each other); *Pointer v. Texas*, 380 U.S. 400 (1965) (holding Confrontation Clause applies to States by way of Fourteenth Amendment).

None of these cases address ineffective assistance of counsel, which is the claim at issue here, albeit with a Confrontation Clause twist. They discuss the Confrontation Clause or similar issues but not in a context close to this one: ability to impeach a crime victim at trial with her preliminary transcript testimony, or even just ability to impeach a witness with a transcript, or other variations on that theme. Thus, Petitioner has not met his burden of showing that the Utah Court of Appeals's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.S. § 2254(d) (2019); *see also Carey*, 549 U.S. at 1016 ("[C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.").

### iii. Victim cross-examination regarding other sexual partner

In evaluating this issue, the court of appeals stated:

> [D]efendant contends that trial counsel was deficient in not raising the issue of the victim's recent sexual intercourse with another, which was documented on the Code R examination. This information, defendant argues, would have further supported his theory that the victim followed traditional Japanese cultural values concerning sexual conduct. Because we held *supra* that the evidence regarding traditional Japanese cultural values was irrelevant, we deem defendant's argument meritless.

*Finlayson*, 956 P.2d at 294-95.

But, here, Petitioner has not challenged the court of appeals's conclusion that the trial court did not abuse its discretion in excluding, without proper foundation, Petitioner's evidence that "the victim would act in conformity with traditional Japanese cultural values simply because

she is Japanese." *Id*. at 291-92. And that conclusion was what the rejection of the victim-cross-examination claim rested upon. The Court therefore declines to examine this issue further.

### iv. Cumulative instances of ineffective assistance

Here, Petitioner urges application of a theme from *Strickland*, 466 U.S. at 694-96, which repeatedly cautions that the prejudice inquiry should consider aggregate terms of reasonable probability that counsel's error affected the proceeding's outcome. Petitioner's whole argument is this statement: "When the scope of trial counsel's acts and omissions are considered, this Court must conclude that there is a reasonable probability of a different result and reverse Mr. Finlayson's convictions and sentence." (Doc. No. 66, at 96.)

Two things: First, Petitioner makes no attempt to show that the court of appeals's determination, that trial counsel's cumulative errors did not undermine its confidence that Petitioner's trial was fair, ran afoul of the federal habeas standard of review. *Finlayson*, 956 P.2d at 295. Second, no prejudicial deficient performance has been found here. This ground for habeas relief therefore fails as well.

### b. Cumulative error

"In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Cole v. Trammell*, 755 F.3d 1142, 1177 (10th Cir. 2014) (quoting *Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010)). "The cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Smith*, 824 F.3d

at 1255 (quoting *United States v. Franklin-El*, 555 F.3d 1115, 1128 (10th Cir. 2009)). There are not errors here, so the cumulative-error doctrine does not apply.

## CONCLUSION

Petitioner's claims are either abandoned, procedurally defaulted, or do not pass muster under the federal habeas standard of review.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus is DENIED and the action DISMISSED WITH PREJUDICE.

IT IS ALSO ORDERED that a certificate of appealability is DENIED.

This action is CLOSED.

DATED this 30th day of September, 2019.

BY THE COURT:

Dale A. Kimball
DALE A. KIMBALL
United States District Judge